UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

———————————

SAMANTHA NEWELL,                                    Case No: 1:cv-19

      Plaintiff,                                            Hon.

v.

CENTRAL MICHIGAN UNIVERSITY
BOARD OF TRUSTEES, CENTRAL
MICHIGAN UNIVERSITY, and
DEBORAH SILKWOOD-SHERER,

      Defendants.

---

Benjamin W. Mills (P66155)
Gruel Mills Nims & Pylman PLLC
Attorneys for Plaintiff
99 Monroe Ave NW, Suite 800
Grand Rapids, MI 49503
(616) 235-5500
bwmills@gmnp.com

---

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, Samantha Newell, by and through her attorneys, Gruel Mills Nims & Pylman, PLLC, and hereby alleges and states as follows for her Complaint:

1.     This is an action for prospective relief and damages arising under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq.; the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1101 et seq.; and Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983.

2.     Plaintiff Samantha Newell is a citizen of the State of Michigan and at all relevant times has been domiciled in Michigan.

3.     Defendant Central Michigan University is an accredited public educational institution, established under and regulated pursuant to the laws of the State of Michigan, and located in the City of Mount Pleasant, County of Isabella, State of Michigan.

4.     Upon information and belief, Deborah Silkwood-Sherer is a resident of the State of Michigan and at all relevant times has been domiciled in the City of Holt, County of Ingham, State of Michigan.

5.     This Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, as Plaintiff seeks redress pursuant to the laws of the United States, specifically the Americans with Disabilities Act, the Rehabilitation Act, and the Civil Rights Act.

6.     This Court possesses supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as such claims stem from the same facts

that give rise to the federal claims over which this Court has original jurisdiction, and thus are so related that they form part of the same case or controversy.

7.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all defendants are residents of Michigan and Central Michigan University is located in this judicial district, and a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

## COMMON ALLEGATIONS

8.    Plaintiff hereby incorporates the above paragraphs as though fully realleged herein.

9.    At all times relevant to this Complaint, Plaintiff has suffered from a genetic physiological disorder/condition marked by hypermobility/hyperflexibility, joint instability and pain, hypotonia, weakness, anatomical abnormalities, learning and cognitive disabilities, and sensory processing issues. Her condition reflects hypotonic cerebral palsy and a rare form of Marfan syndrome.

10.    Plaintiff's condition impacts her respiratory and musculoskeletal systems, cognitive and sensory functions, and ability to perform vigorous or taxing physical activities and manual tasks.

11.    Plaintiff was accepted to Central Michigan University's Graduate Program in Physical Therapy through an early decision process and began classes in May of 2016.

12.     Deborah Silkwood-Sherer is the director of CMU's Graduate Program in Physical Therapy.

13.     Prior to accepting Plaintiff as a student, CMU had knowledge of Plaintiff's physical condition, limitations, and need for accommodations; Plaintiff met with Director Silkwood-Sherer prior to applying for the program to discuss her condition, and Plaintiff's application essay described how she had overcome challenges caused by her condition.

14.     At no time was Plaintiff asked to undergo a physical examination or evaluation.

15.     Director Silkwood-Sherer told Plaintiff that other students with disabilities had been granted accommodations and were successful in the physical therapy program at CMU, including a blind student.

16.     Plaintiff's own treating physical therapists told her she could be a qualified physical therapist despite her disability if she chose to work in certain practice areas.

17.     CMU's Graduate Program in Physical Therapy Student Handbook instructs disabled students to seek accommodations as follows:

> Students who have a disability that requires accommodations to participate in class activities or meet course requirements should register with the Office of Student Disability Services, in Park Library 120, telephone (989) 774-3018. The staff of that office will help determine what accommodations need to be made to assist the student. The Office of Student Disability Services will then

4

inform the faculty members of the accommodations needed and assist them in obtaining the needed resources.

18.     Plaintiff promptly registered with CMU's Office of Student Disability Services upon beginning the graduate program and provided all requested medical documentation of her disability.

19.     Plaintiff was approved to live in housing designated for students with disabilities.

20.     By reason of her disability, Plaintiff was granted academic accommodations which provided extra time to take examinations and allowed her to use a private testing room.

21.     In the fall 2016 semester, one of Plaintiff's required courses was Patient Care Lab, which was taught by Dr. Elaine Betts and Dr. Timothy Zipple. The course required that students regularly experience electrical stimulation ("e-stim") treatments.

22.     The electrical stimulation treatments caused Plaintiff to experience headaches, fatigue, confusion, inability to concentrate, insomnia, lack of appetite, memory problems, executive function issues, and amplified emotions due to her preexisting sensory processing issues related to her disorder.

23.     Plaintiff requested an accommodation regarding the electrical stimulation treatments through Student Disability Services, which arranged a meeting with Director Silkwood-Sherer.

24.    Director Silkwood-Sherer denied Plaintiff an accommodation regarding the electrical stimulation on the basis that she personally did not believe that the problems Plaintiff was experiencing were caused by the interaction of her disability with the electrical stimulation treatments.

25.    Director Silkwood-Sherer told Plaintiff that rather than work through SDS to obtain accommodations, Plaintiff was required to meet individually with each professor and ask if the professor would agree to one of Director Silkwood-Sherer's suggested possible accommodations.

26.    Dr. Betts refused to grant Plaintiff an accommodation regarding the electrical stimulation treatments because she did not believe that electrical stimulation interacted with Plaintiff's disorders in the manner Plaintiff reported.

27.    Prior to the final exam in Patient Care Lab, Plaintiff sought assistance from SDS to avoid having electrical stimulation treatments applied to her during the final exam. The accommodation was granted informally. Other requested accommodations were denied.

28.    On December 22, 2016, Plaintiff received an email from the SDS director, Lynne L'Hommedieu, instructing Plaintiff to go directly to her professors and Director Silkwood-Sherer to request any additional accommodations in the future rather than working through SDS.

29.    In January 2017, Plaintiff emailed a letter to her professors regarding her need for accommodations. Plaintiff suggested as possible accommodations: changes to attendance requirements, the provision of lecture materials ahead of class, provision of a note-taker, provision of video recordings of the instructions in labs, additional time with the professor, additional time to formulate answers in group evaluations and activities, the use of noise-cancelling headphones during testing, breaks during testing, and modifications to physical modalities or treatments that were harmful due to her physical condition.

30.    The accommodations Plaintiff suggested in her letter were based on recommendations made by Plaintiff's neuro-psychologist, Dr. Rochelle Manor.

31.    Plaintiff met individually with some of her professors regarding the requested accommodations. The individual professors granted in part and denied in part the accommodations Plaintiff suggested in her January letter, leaving Plaintiff with an inconsistent patchwork of accommodations among her courses. The granted accommodations were inconsistently provided.

32.    In the winter/spring 2017 semester, Plaintiff's required courses included PTH 636 - Exam and Diagnosis, PTH 646 - Patient Care II, PTH 672 - Clinical Anatomy and Kinesiology of Human Joints, and PTH 633 - Clinical Education I. Each of these courses required that students perform and receive certain physical mobilizations, stretches, and other treatments.

33.     Due to Plaintiff's disorder, particularly her hypotonia (low muscle tone) and hypermobile joints, joint mobilizations and other treatments are contraindicated and present significant risk of irreversible physical injury. Specifically, such treatments can over-stretch a hypermobile joint and cause permanent damage to connective tissues, soft tissue entrapment in the joint or impingement, muscle spasms and guarding, subluxation or dislocation of the joint, and chronic increased joint instability leading to future injuries.

34.      On several occasions using various methods of communication, Plaintiff requested from her professors the accommodation that joint mobilizations and other harmful treatments not be performed on her.

35.     Plaintiff's professors denied the requested accommodation that she not be subjected to joint mobilizations and other treatments.

36.     Plaintiff was led to believe that she was required to endure the joint mobilizations and other treatments to stay in the physical therapy program, and therefore the consequence of refusing the harmful procedures was loss of the ability to pursue her chosen profession at great financial cost.

37.     During much of the winter/spring 2017 semester, professors and other students performed joint mobilizations, stretches, and other treatments on Plaintiff to the same extent that such treatments were done on non-disabled students.

38.     Plaintiff's student partners were often reluctant to perform mobilizations and other treatments on Plaintiff because they knew such treatments could easily injure her. In some instances, students performing treatments on Plaintiff readily noticed that Plaintiff's joints moved too easily and beyond normal range of motion, were easily overstretched, and could be obviously damaged with little force. As a result, some students refused to perform treatments on her.

39.     Plaintiff suffered significant injury due to the joint mobilizations, stretches, and other treatments being performed on her from January through April 2017, including but not limited to:

    a.  Injuries to her hips, including bilateral partial tears of the hip labra and psoas tendonitis, requiring surgical repair and causing early osteo-arthritis;

    b.  Aggravation of previous soft tissue, ligament, and tendon injuries to her shoulders and increased instability;

    c.  An ankle sprain;

    d.  Muscle spasms and guarding due to thoracic mobilizations;

    e.  Injury to her wrists causing permanent increased instability, requiring Plaintiff to wear wrist braces for any strenuous activity in the future; and

    f.  Other soft tissue damage causing polyarthralgia in her wrists, ankles, knees, spine, and shoulders.

40.     Due to ongoing pain and injuries from the mobilizations and other treatments, Plaintiff continued to seek the accommodation that such maneuvers not

be performed on her from her individual professors as the winter/spring 2017 semester continued.

41.     Plaintiff reported to Dr. Zipple and Director Silkwood-Sherer that she had been injured by Dr. Zipple during a class exercise.

42.     In mid-March 2017, in contradiction of prior direction given to Plaintiff, Plaintiff's advisor, professor Jan Perkins, and Director Silkwood-Sherer told Plaintiff that the faculty could not grant her new accommodations, but that any accommodations must be approved through SDS.

43.     In a response email, Plaintiff expressed her confusion and lack of understanding as to the appropriate process for obtaining accommodations. Plaintiff requested an accommodations meeting to discuss her disability and the accommodations she needed.

44.     Director Silkwood-Sherer instituted disciplinary proceedings against Plaintiff for alleged professionalism issues. The purported lack of professionalism stemmed solely from Plaintiff's attempts to obtain accommodations from her professors, her confusion regarding the appropriate process to do so, and the consequences of the denial of accommodations she needed. Plaintiff was issued a written warning.

45.     Due to the pending disciplinary action, Plaintiff refrained from requesting accommodations and tried to tolerate the mobilizations and other treatments that were harming her in March 2017.

46.      On March 27, 2017, one of Plaintiff's treating doctors, Dr. Cynthia DeMeester, wrote a letter in support of Plaintiff's requested accommodations to Director Silkwood-Sherer and SDS Director L'Hommedieu.

47.     On March 28, 2017, Plaintiff attended a purported disciplinary behavior expectations meeting intended to address the alleged professionalism issues. The meeting was attended by Director Silkwood-Sherer, Dr. Perkins, and SDS Director L'Hommedieu.

48.     Plaintiff sought to bring an attorney to the disciplinary meeting, but was told that lawyers were not allowed to attend. Director Silkwood-Sherer additionally warned and discouraged Plaintiff not to get an attorney involved.

49.     During the March 28 meeting, Plaintiff's accommodation requests were discussed and conflated with the purported behavioral issues.

50.     Plaintiff's accommodation requests were denied based on misinformation, speculation, generalizations, and stereotypes about disabled people and discriminatory animus.

51.     Director Silkwood-Sherer was largely responsible for the denial of Plaintiff's requested accommodations. She exhibited insensitivity and bias and had

inadequate training regarding the requirements of the ADA, including how to fashion reasonable accommodations. Specifically, Director Silkwood-Sherer:

a. Deliberately discounted Plaintiff's claims of disability and injury;

b. Was ignorant of or misinformed regarding Plaintiff's condition, particularly in her belief that faculty could easily "fix" any injuries Plaintiff sustained from mobilizations, as evidenced by coercive pressure on Plaintiff to "try" and "meet us halfway" by undergoing some mobilizations and treatments, when *any* such treatments, no matter how forceful, would likely cause irreversible injury;

c. Failed to consider and accept information regarding Plaintiff's condition and limitations from Plaintiff's treating doctors;

d. Insisted that Plaintiff must be treated exactly the same as non-disabled students in all respects;

e. Made unfounded assumptions and speculations regarding the likelihood that accommodations would be denied to Plaintiff in an employment setting;

f. Placed undue emphasis on the importance of experiencing joint mobilizations and other treatments when such action is not required for Plaintiff's licensure or the program's accreditation, including falsely claiming that the Commission on Accreditation in Physical Therapy Education prescribed that students be subject to mobilizations;

g. Mischaracterizing Plaintiff's request to avoid receiving joint mobilizations and other treatments as a request to also avoid performing such treatments in order to justify denial of the requested accommodation;

h. Refused to consider or grant accommodations to prevent serious bodily injury to Plaintiff;

i. Prohibited Plaintiff from avoiding joint mobilizations and other treatments when other students, including pregnant women and

those with prior injuries, were previously granted accommodations and modifications to avoid such maneuvers without scrutiny or dispute;

j.  Disciplined Plaintiff for asking her professors that she not receive joint mobilizations and other treatments during class when other students were allowed to ask for such accommodations during class;

k.  Excluded and supplanted the involvement of Student Disability Services and SDS Director L'Hommedieu in the analysis of appropriate accommodations for Plaintiff, in violation of the program's and university's written policies;

l.  Failed to clarify or comprehensibly set forth the accommodations process she insisted Plaintiff follow, which contradicted the program's and university's written policies regarding accommodations;

m. Made overtly discriminatory comments regarding the place and treatment of handicapped individuals in society and the use of accommodations in the educational context; and

n.  Exhibited discriminatory intent against Plaintiff in other ways to be revealed during discovery.

52.    Plaintiff continued to seek accommodations from her professors to avoid having joint mobilizations and other treatments performed on her through early April.

53.    Plaintiff filed a complaint with the Office of Civil Rights and Institutional Equity (OCRIE) at CMU in early April 2017 regarding the accommodations process and repeated denial of her requested accommodations.

54.    Director Silkwood-Sherer instructed Plaintiff that she could not request accommodations from her professors while the complaint with the OCRIE was

13

pending, but that Plaintiff was still expected to fully participate in her courses without an accommodation addressing joint mobilizations and other harmful physical exercises and treatments.

55.    The OCRIE intervened and granted Plaintiff's request that she not be subjected to the joint mobilization treatments that were injuring her.

56.    The OCRIE's initial inquiry was conducted from about April 6 through July 7, 2017.

57.    During the spring and summer of 2017, Plaintiff continued to experience difficulty in obtaining accommodations, discriminatory treatment, and harassment regarding her clinical placements due to unwarranted interference by Director Silkwood-Sherer.

58.    Plaintiff was assigned to a clinical site in the spring of 2017 that required heavy patient lifting. She was instructed that CMU had no authority or ability to grant her accommodations for her clinical experiences. She was further instructed not to notify the site of her disability or need for accommodations prior to beginning work there in order to not jeopardize the placement.

59.    Plaintiff struggled to meet the physical demands of the clinical position due to the injuries she had sustained from joint mobilizations and other treatments in her classes and was harassed and teased by employees of the facility regarding

14

her lack of strength. This clinical experience was ended early due to Plaintiff's inability to perform the physical duties required by the position.

60.     In late May and early June, Plaintiff submitted letters from her doctor to the director of clinical education explaining that Plaintiff required additional accommodations in her clinical programs because she had suffered a number of recent strains/sprains due to the mobilizations and other treatments.

61.     Plaintiff met with Director Silkwood-Sherer and representatives of OCRIE and SDS on July 10, 2017 to discuss her accommodations. Plaintiff requested that she be able to observe a clinical site prior to being assigned there to evaluate if she would physically be able to complete the work at that facility. Director Silkwood-Sherer denied the requested accommodation on the basis that other students were not allowed to do so.

62.     In late July, the OCRIE finished its investigation and reached a partial agreement with Director Silkwood-Sherer granting Plaintiff some additional accommodations, including a partial lifting accommodation in her clinical placements, the ability to record classes if the professor and other students give permission, and working with different combinations of students when performing maneuvers that would be injurious to Plaintiff to avoid Plaintiff having to endure such maneuvers.

15

63.     The formal written disciplinary warning against Plaintiff was nullified following the OCRIE's investigation.

64.     Plaintiff's interactions with Director Silkwood-Sherer continued to be harassing and hostile through the 2017-2018 school year. In December 2017, Plaintiff was diagnosed with generalized anxiety disorder and irritable bowel syndrome due to a significant exacerbation of anxiety caused by her interactions with Director Silkwood-Sherer.

65.     In August 2017, Plaintiff was assigned to a second clinical placement which was made aware of her diagnosis and need for accommodations. Plaintiff was successful at this clinical site.

66.     Plaintiff continued to be successful in the physical therapy program through the 2017-2018 school year with accommodations.

67.      Plaintiff satisfactorily completed all coursework for CMU's Graduate Program in Physical Therapy, earning a 3.67 grade point average.

68.     Plaintiff is now on medical leave from the physical therapy program due to the injuries she sustained when professors and other students performed joint mobilizations, stretches, and other treatments on her during the winter/spring 2017 semester. Plaintiff intends to complete the remaining clinical requirements of the physical therapy program upon her recovery from these injuries.

## COUNT I – ADA AND REHABILITATION ACT:
## FAILURE TO GRANT REASONABLE ACCOMMODATIONS (CMU)

69.     Plaintiff hereby incorporates the above paragraphs as though fully realleged herein.

70.     Central Michigan University is a public institution of higher education that receives federal financial assistance.

71.     Pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, Central Michigan University is prohibited from discriminating against any individual on the basis of disability and must make reasonable modifications to its policies, practices, or procedures where necessary to avoid discrimination on the basis of disability.

72.     Plaintiff has, has a record of having, or is regarded as having a disability as that word is defined in the ADA, 42 U.S.C. § 12102(1), because she has a physical and mental impairment that substantially limits one or more of her major life activities.

73.     Plaintiff is a qualified individual as defined by the ADA, because with or without reasonable modifications to the rules, polices, or practices of CMU, she meets the essential eligibility requirements for participation in the Graduate Program in Physical Therapy provided by Central Michigan University, a public entity.

17

74.     Specifically, with accommodations, Plaintiff met or exceeded the Essential Functions and Technical Standards applicable to graduate-level physical therapy students and completed all of her coursework with a high grade point average.

75.     Plaintiff was denied the benefits of or participation in and/or subjected to discrimination in the Graduate Program in Physical Therapy at Central Michigan University because of her disability.

76.     CMU subjected Plaintiff to discrimination by failing to make reasonable accommodations, breaching its affirmative duty to reasonably accommodate the known physical or mental limitations of an otherwise qualified person. Specifically:

      a. CMU knew of plaintiff's disability and physical and mental limitations because Plaintiff timely identified her disability in her application materials, to Student Disability Services, to her professors, and to Director Silkwood-Sherer, and provided all requested supporting medical documentation, including medical support for her specific requested accommodations;

      b. The accommodations requested by Plaintiff were reasonable and would not have fundamentally altered the nature of the program or imposed an undue financial burden on Central Michigan University; and

      c. CMU failed to meaningfully engage in the interactive process to identify appropriate accommodations, including by failing to engage in reasoned deliberation and diligent assessment of available accommodation options.

77.     CMU administered its accommodations request procedures and interactive process in a manner that had the effect of discriminating on the basis of disability, including by:

a.  Failing to develop, follow, and/or disclose a clear and understandable procedure for Plaintiff to request and obtain accommodations;

b.  Frequently changing the expected process for Plaintiff to request accommodations and imposing discipline when Plaintiff followed the provided instructions;

c.  Failing to provide documentation or comprehensible instruction regarding the process with which Plaintiff was expected to follow to request accommodations;

d.  Allowing individuals who had insufficient training, knowledge, or experience in Plaintiff's condition or in fashioning reasonable accommodations for disabled individuals to make decisions regarding Plaintiff's accommodations;

e.  Allowing individuals who expressed hostility and bias against handicapped students to make decisions regarding Plaintiff's accommodations;

f.  Allowing individual professors to make decisions regarding Plaintiff's accommodations in an *ad hoc* or patchwork manner;

g.  Excluding Student Disability Services from the reasonable accommodations interactive process, in violation of the program's and university's policies;

h.  Providing conflicting, wrong, or incomplete information to Plaintiff;

i.  Failing to engage in reasoned deliberation and diligent assessment of available accommodation options;

j. Disregarding medical information and limitations supported by Plaintiff's treating doctors;

k. Failing to consider a series of alternatives and make a careful, thoughtful, rational review of the academic program and its requirements;

l. Conflating Plaintiff's requests for accommodations with purported disciplinary and professionalism issues;

m. Failing to provide documentation of the reasons for the denials of Plaintiff's requested accommodations;

n. Ignoring and failing to report or investigate Plaintiff's disclosures that she had been injured by a professor in class;

o. Causing an unreasonable delay in evaluating and granting accommodation requests after Plaintiff timely disclosed her disability and her need for accommodations;

p. Applying heightened standards to Plaintiff's requests for accommodations which were inconsistent with expectations for other students who desired to be granted a modification because they could be injured by physical therapy methods or techniques;

q. Repeatedly denying or delaying the provision to Plaintiff of reasonable accommodations which did not impact a fundamental element of the educational program; and

r. Other practices and procedures to be revealed during discovery.

78. Judicial deference to CMU's academic decisions is not appropriate because CMU did not exhibit reasoned consideration or professional judgment, but rather acted on stereotypes, speculation, and bias against disabled individuals.

79. CMU's failure to timely make reasonable accommodations and its method of administering the accommodations process as described above constitute

discrimination on the basis of disability in violation of the ADA, 42 U.S.C. § 12132, 42 U.S.C. § 12182(b)(1)(D), (b)(2)(A)(ii); and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

80.     CMU intentionally violated Plaintiff's rights under the ADA and Rehabilitation Act with malice and/or reckless indifference to Plaintiff's federally-protected rights.

81.     As a direct and proximate result of CMU's discrimination on the basis of disability, Plaintiff has sustained significant injuries and damages, including but not limited to serious permanent physical injury and resulting pain and suffering, need for surgery, medical bills, future impact to her physical abilities, and delay in completion of her academic studies, causing lost opportunity for earnings; costs of bringing this action; past and future emotional distress, mental anguish, loss of enjoyment of life, and other financial and nonpecuniary damages.

## COUNT II – ADA AND REHABILITATION ACT: RETALIATORY HARASSMENT (CMU)

82.     Plaintiff hereby incorporates the above paragraphs as though fully realleged herein.

83.     Pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, Defendants are prohibited from discriminating against an individual on the basis of disability by retaliating against an individual for the exercise of statutorily-protected rights.

21

84.     Plaintiff engaged in a protected activity under the ADA and Rehabilitation Act when she requested reasonable accommodations.

85.     CMU, through the actions of Director Silkwood-Sherer, engaged in severe and/or pervasive harassing conduct in retaliation for Plaintiff's exercise of a protected activity as described above, including but not limited to:

> a. Issuing an unfounded written disciplinary warning based on Plaintiff's attempts to request accommodations;
>
> b. Disparaging Plaintiff to others;
>
> c. Accusing Plaintiff of faking or exaggerating her injuries and/or disability;
>
> d. Scrutinizing the academic performance and attendance of Plaintiff more than other students;
>
> e. Interfering with Plaintiff's clinical placements;
>
> f. Abusive verbal behavior; and
>
> g. Other actions described herein and to be revealed during discovery.

86.     The retaliatory harassment described above was likely to have deterred or dissuaded a reasonable person from making or supporting accommodation requests or other activities protected by the ADA and Rehabilitation Act and did deter Plaintiff from making accommodation requests.

87.     This retaliatory harassment constitutes discrimination on the basis of disability in violation of the ADA, 42 U.S.C. § 12203 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

88.     As a direct and proximate result of CMU's discrimination on the basis of disability, Plaintiff sustained the damages set forth above.

## COUNT III – ADA AND REHABILITATION ACT: INTERFERENCE (CMU)

89.     Plaintiff hereby incorporates the above paragraphs as though fully realleged herein.

90.     Pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, Defendants are prohibited from discriminating against an individual on the basis of disability by coercing, intimidating, threatening, or otherwise interfering with any person's exercise or enjoyment of any rights granted by the ADA.

91.     CMU, by the actions of Director Silkwood-Sherer, subjected Plaintiff to coercion, threats, intimidation, and/or interference with the exercise or enjoyment of her ADA rights because Plaintiff requested accommodations, including but not limited to:

     a. Deliberately interfering with the accommodations process as described in Count I of this Complaint;

     b. Issuing an unfounded written disciplinary warning based solely on Plaintiff's attempts to request accommodations;

     c. Scrutinizing the academic performance and attendance of Plaintiff more than other students;

23

   d. Interfering with Plaintiff's clinical placements;

   e. Engaging in abusive verbal behavior;

   f. Attempting to coerce Plaintiff to forego an accommodation to which she was otherwise entitled;

   g. Intimidating Plaintiff from requesting accommodations by indicating that such a request would result in Plaintiff's dismissal from the program or inability to find a job;

   h. Disparaging Plaintiff to others;

   i. Threatening and/or discouraging Plaintiff to refrain from consulting with an attorney regarding her rights under the ADA and Rehabilitation Act; and

   j. Other actions to be revealed during discovery.

92.    These coercive, threatening, intimidating, and interfering actions were reasonably likely to interfere with Plaintiff's exercise or enjoyment of her ADA and Rehabilitation Act rights and did interfere with her exercise and enjoyment of her ADA and Rehabilitation Act rights.

93.    This interference with Plaintiff's statutory rights constitutes discrimination on the basis of disability in violation of the ADA, 42 USC § 12203 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

94.    As a direct and proximate result of CMU's discrimination on the basis of disability, Plaintiff sustained the damages set forth above.

## COUNT IV – ADA AND REHABILITATION ACT:
## HOSTILE EDUCATIONAL ENVIRONMENT (CMU)

95.    Plaintiff hereby incorporates the above paragraphs as though fully realleged herein.

96.    Pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, Defendants are prohibited from discriminating against an individual on the basis of disability by creating a educational environment that has the purpose or effect of unreasonably interfering with the individual's performance or of creating an intimidating, hostile, or offensive environment.

97.    Plaintiff is a member of a protected group because she is a person with disability as defined by ADA.

98.    Plaintiff was subjected to severe, pervasive, and objectively offensive unwelcome harassment based on her disability, as described above, including discriminatory intimidation, ridicule, insult, and humiliation.

99.    The discriminatory conduct interfered with Plaintiff's academic and clinical performance and caused her to suffer severe anxiety.

100.    The harassment was so severe, pervasive, and objectively offensive that it undermined and detracted from her educational experience in a manner that denied her equal access to the institution's resources and opportunities.

101.   This retaliatory harassment constitutes discrimination on the basis of disability in violation of the ADA, 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

102.   As a direct and proximate result of CMU's discrimination on the basis of disability, Plaintiff sustained the damages set forth above.

## COUNT V – PDCRA (CMU)

103.   Plaintiff hereby incorporates the above paragraphs as though fully realleged herein.

104.   Plaintiff is a person with a disability as defined by the Persons with Disabilities Civil Rights Act, MCL 37.1103(d)(i)(C), (h), (l)(iii) because she has determinable physical and mental characteristics which resulted from a congenital condition of birth or functional disorder which substantially limit one or more of her major life activities but are unrelated to her ability to use and benefit from educational opportunities, programs, and facilities at CMU, as described above.

105.   CMU is an educational institution as defined by the PDCRA, MCL § 37.1401.

106.   Pursuant to the PDCRA, MCL 37.1102(2), Central Michigan University must accommodate a person with a disability for purposes of education when the accommodation does not impose an undue hardship on the institution.

107.   Plaintiff is qualified for the Graduate Program in Physical Therapy and her disability is unrelated to her ability to use and benefit from the program at CMU.

108.   The accommodations Plaintiff requested did not impose an undue hardship on CMU.

109.   By refusing and delaying the provision of reasonable accommodations to Plaintiff and failing to administer the accommodations process properly as described above, CMU's actions denied Plaintiff the full utilization or benefit of the institution and its services and otherwise discriminated against her because of her disability, in violation of the PDCRA, MCL § 37.1402.

110.   By engaging in disability-based harassment, coercion, intimidation, threats, and interference with Plaintiff's statutorily-protected rights, CMU denied Plaintiff the full utilization or benefit of the institution and its services and otherwise discriminated against her because of her disability, in violation of the PDCRA, MCL § 37.1402.

111.   By creating and allowing a severe and pervasive hostile educational environment to exist because of Plaintiff's disability, CMU denied Plaintiff the full utilization or benefit of the institution and its services and otherwise discriminated against her because of her disability, in violation of the PDCRA, MCL § 37.1402.

112. As a direct and proximate result of CMU's discrimination on the basis of disability, Plaintiff has sustained significant injuries and damages as described above.

## COUNT VI – § 1983 (DR. SILKWOOD-SHERER)

113. Plaintiff hereby incorporates the above paragraphs as though fully realleged herein.

114. Plaintiff enjoys the constitutionally-protected Due Process right to personal security, bodily integrity, and freedom from bodily injury under the Fourteenth Amendment to the United States Constitution.

115. Plaintiff's Due Process right to personal security, bodily integrity, and freedom from bodily injury is a recognized fundamental constitutional right and was clearly established at all times relevant to this Complaint.

116. At all relevant times, Dr. Silkwood-Sherer was acting within the scope of her employment and under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Central Michigan University.

117. The acts alleged above amount to a violation of Plaintiff's clearly established constitutionally-protected right to bodily integrity and freedom from bodily injury, of which reasonable persons in Dr. Silkwood-Sherer's position should have known.

118.    Dr. Silkwood-Sherer was the moving force and cause of repeated constitutional injuries to Plaintiff based on her failure to grant Plaintiff accommodations and the application of coercive pressure on Plaintiff to participate in mobilization and other harmful exercises against her will, thereby subjecting Plaintiff to invasion of her bodily integrity and bodily injury.

119.    Dr. Silkwood-Sherer exhibited bad faith and reprehensible conduct that was not objectively reasonable when she forced Plaintiff to endure harmful physical mobilizations and other treatments as a condition of continuing her education at CMU.

120.    Dr. Silkwood-Sherer is liable in her individual capacity for compensatory and punitive damages under 42 U.S.C. § 1983.

121.    As a direct and proximate result of the constitutional violations caused by Dr. Silkwood-Sherer, Plaintiff suffered the damages described above.

WHEREFORE, Plaintiff Samantha Newell requests that this honorable Court enter a judgment on her behalf against Defendants for prospective relief necessary to allow Plaintiff to complete her educational program and awarding damages to Plaintiff which a jury determines to be fair and reasonable to compensate her for these injuries described above, along with damages, including costs, interest, and reasonable attorney fees incurred and all other appropriate relief.

GRUEL MILLS NIMS & PYLMAN PLLC

Dated:  July 3, 2019                     By:  /s/   *Benjamin W. Mills*
                                             Benjamin W. Mills (P66155)
                                             Laura B. Danielson (P77789)
                                             Attorneys for Plaintiff
                                             99 Monroe Ave NW, Ste 800
                                             Grand Rapids, MI 49503
                                             (616) 235-5500
                                             Email: bwmills@gmnp.com

## JURY DEMAND

NOW COMES Plaintiff, Samantha Newell, by and through her attorneys, Gruel Mills Nims & Pylman, PLLC, and hereby demands a trial by jury in the above cause.

GRUEL MILLS NIMS & PYLMAN PLLC

Dated:  July 3, 2019                     By:  /s/   Benjamin W. Mills
                                             Benjamin W. Mills (P66155)
                                             Laura B. Danielson (P77789)
                                             Attorneys for Plaintiff
                                             99 Monroe Ave NW, Ste 800
                                             Grand Rapids, MI 49503
                                             (616) 235-5500
                                             Email: bwmills@gmnp.com