UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAMANTHA NEWELL,

        Plaintiff,                       Case No. 19-11988

v.                                                           Honorable Thomas L. Ludington

CENTRAL MICHIGAN UNIVERSITY
BOARD OF TRUSTEES and DEBORAH
SILKWOOD-SHERER,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANT SILKWOOD-SHERER'S MOTION FOR JUDGMENT ON THE PLEADINGS**

On July 3, 2019, Plaintiff, Samantha Newell, filed a complaint against Defendants. Plaintiff is a graduate student in Central Michigan University's Physical Therapy program. Defendants are Central Michigan University ("CMU") and Director of CMU's Doctoral Program in Physical Therapy. On October 2, 2019, Plaintiff filed a second amended complaint alleging Defendants violated the Americans with Disabilities Act due to their failure to grant reasonable accommodations, retaliatory harassment, interference, and hostile educational environment and violated her due process rights. ECF No. 14. On February 13, 2020, Defendant Silkwood-Sherer filed a motion for judgment on the pleadings regarding Count V (Plaintiff's claim that Defendant violated her constitutional right to bodily integrity). ECF No. 17.

**I.**

Plaintiff suffers "from a genetic physiological disorder/condition marked by hypermobility/hyperflexibility, joint instability and pain, hypotonia, weakness, anatomical abnormalities, learning and cognitive disabilities, and sensory processing issues. Her condition

reflects hypotonic cerebral palsy and a rare form of Marfan syndrome." ECF No. 14 at PageID.139. Plaintiff alleges that her "condition impacts her respiratory and musculoskeletal systems, cognitive and sensory functions, and ability to perform vigorous or taxing physical activities and manual tasks." *Id.*

**A.**

Plaintiff is a graduate student in Central Michigan University's Physical Therapy Graduate Program. She began her studies in May 2016. *Id.* At CMU, Deborah Silkwood-Sherer "is a professor and the chair of CMU's Physical Therapy Department and the Director of the Doctoral Program in Physical Therapy." *Id.* at PageID.140. Plaintiff alleges that because of her application essay and a meeting with Defendant Silkwood-Sherer prior to submitting her application, "CMU had knowledge of [her] physical condition, limitations, and need for accommodations" but that she was never asked to complete a physical evaluation for the program. *Id.* In addition, Plaintiff alleges that her treating physical therapists informed her that she would be able to become a physical therapist subject to any limitations or requirements of the practice area she selected. *Id.*

> CMU's Graduate Program in Physical Therapy Student Handbook provides
>
> Students who have a disability that requires accommodations to participate in class activities or meet course requirements should register with the Office of Student Disability Services . . . . The staff of that office will help determine what accommodations need to be made to assist the student. The Office of Student Disability Services will then inform the faculty members of the accommodations needed and assist them in obtaining the needed resources.
> *Id.* at PageID.140-141.

Plaintiff alleges she registered with the Office of Student Disability Services when she began her studies and "was granted academic accommodations which provided extra time to take examinations that allowed her to use a private testing room." *Id.* at PageID.141. One class at issue is Patient Care Lab, a course Plaintiff completed in Fall 2016. *Id.* As part of the course, "students

regularly experience electrical stimulation ('e-stim') treatments" which caused Plaintiff "to experience headaches, fatigue, confusion, inability to concentrate, insomnia, lack of appetite, memory problems, executive function issues, and amplified emotions due to her preexisting sensory processing issues related to her disorder." *Id.* Plaintiff alleges that she worked with Student Disability Services to request an accommodation regarding the e-stim treatments and a meeting with Defendant Silkwood-Sherer was arranged. *Id.* at PageID.142. During the meeting Plaintiff was informed that she "was required to meet individually with each professor and ask if the professor would agree to one of Director Silkwood-Sherer's suggested possible accommodations." *Id.* Dr. Betts (Plaintiff's professor) and the Office of Student Disability Services granted her relief from the final exam requirements, but denied every other requested accommodations. *Id.*

During the winter/spring 2017 semester (January – April 2017), Plaintiff enrolled in the following required courses: Exam and Diagnosis, Patient Care II, Clinical Anatomy and Kinesiology of Human Joints, and Clinical Education. *Id.* at PageID.143-144. In January 2017 Plaintiff emailed her professors for the upcoming semester requesting possible accommodations including modifications to attendance requirements, obtaining materials ahead of time, a notetaker, additional time for projects, testing accommodations, and "modifications to physical modalities or treatments that were harmful due to her physical condition." *Id.* at PageID.143. Plaintiff alleges some accommodations were granted, others denied, and that many of the promised accommodations were not always provided. *Id.* at PageID.143-144. Plaintiff alleges as a result of the treatments from her class in January through April 2017 that she received the following injuries:

> a. Injuries to her hips, including bilateral partial tears of the hip labra and psoas tendonitis, requiring surgical repair and causing early osteo-arthritis;
> b. Aggravation of previous soft tissue, ligament, and tendon injuries to her shoulders and increased instability;

> c. An ankle sprain;
> d. Muscle spasms and guarding due to thoracic mobilizations;
> e. Injury to her wrists causing permanent increased instability, requiring Plaintiff to wear wrist braces for any strenuous activity in the future; and
> f. Other soft tissue damage causing polyarthralgia in her wrists, ankles, knees, spine, and shoulders.
>
> *Id.* at PageID.145-146.

Plaintiff alleges she reported she was injured to Dr. Zipple. *Id.* at PageID.146. Then in March 2017 Plaintiff alleges Defendant Silkwood-Sherer told her that she could not request additional accommodations from her professors. *Id.* Instead, any new accommodations must be made through the Office of Student Disability Services. *Id.*

At some point, Plaintiff states Defendant Silkwood-Sherer began disciplinary proceedings against her regarding professional concerns, which Plaintiff alleges were related to her request for disability accommodations. *Id.* at PageID.146-147. During the disciplinary proceedings, Plaintiff alleges Defendant Silkwood-Sherer was insensitive to individuals with disabilities and otherwise ignorant of ADA requirements as well as Plaintiff's condition. *Id.* at PageID.148. In her complaint, Plaintiff alleges that she stopped seeking accommodations as a result of the disciplinary proceedings, but later explains that she continued requesting further accommodations. *Id.* at PageID.147-149.

In spring 2017 Plaintiff's clinical placement site required that she engage in "heavy patient lifting" and she alleges that she was told she could not receive any accommodations at her clinical site. *Id.* at PageID.150-151. On July 10, 2017 Plaintiff had another meeting with Defendant Silkwood-Sherer to discuss her requested accommodations and to observe her clinical sites prior to placement to determine if she could work at the facility. *Id.* at PageID.151. The request was denied. *Id.*

**B.**

In April 2017 Plaintiff filed a complaint with the Office of Civil Rights and Institutional Equity at CMU regarding the denials of her requests for accommodation and it "intervened and granted Plaintiff's request that she not be subjected to the joint mobilization treatments that were injuring her." *Id.* at PageID.150. The full investigation determined that Plaintiff should be granted some accommodations, including "working with different combinations of students when performing maneuvers that would be injurious to Plaintiff to avoid Plaintiff having to endure such maneuvers." *Id.* at PageID.151-152.

**C.**

Plaintiff alleges that she successfully completed the 2017-2018 school year with accommodations. *Id.* at PageID.152. However, during that period of time she was diagnosed with generalized anxiety disorder and irritable bowel syndrome. *Id.* at PageID.152. She completed her coursework for the physical therapy program but has some incomplete clinical requirements. *Id.* at PageID.152-153. Plaintiff explains she is now on medical leave from the physical therapy program due to the injuries she suffered in the winter/spring 2017 term (January – April). *Id.*

**II.**

FRCP 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." "The standard of review for a [motion for] judgment on the pleadings [under rule 12(c)] is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). 12(c) motions address the complaint on the pleadings, rather than after discovery has occurred. Courts must view the pleadings in the "light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled

to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). A motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991); see also *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

### III.

Defendant Silkwood-Sherer argues that Plaintiff has failed to state a claim as to Count V for violating her due process rights to "personal security, bodily integrity, and freedom from bodily injury under the Fourteenth Amendment to the United States Constitution." ECF No. 9 at PageID.78.

### A.

To state a 1983 claim, the plaintiff must demonstrate that "(1) she was deprived of a right secured by the Constitution; and that (2) such deprivation occurred under color of state law." *Doe v. Claiborne County, Tenn*, 103 F.3d 495, 511 (6th Cir. 1996). Additionally, the "right to personal security and to bodily integrity bears an impressive constitutional pedigree." *Doe*, 103 F.3d at 506. "[A]lthough violations of the right to bodily integrity usually arise in the context of physical punishment, the scope of the right is not limited to that context." *In re Flint Water Cases*, 384 F. Supp. 3d 802, 839 (E.D. Mich. 2019); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062–63 (6th Cir. 1998). The parties agree that the correct standard is "shocks the conscience." *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 724-25 (6th Cir. 1996). However, they disagree on the relevant test for an adult disabled individual in graduate school.

In *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) the Sixth Circuit articulated two separate tests to determine if behavior shocks the conscience depending on if the defendants had the ability to deliberate.

> In situations wherein the implicated state, county, or municipal agent(s) are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action . . . , their actions will be deemed conscience-shocking if they were taken with 'deliberate indifference' towards the plaintiff's federally protected rights. In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation . . . public servants' reflexive actions 'shock the conscience' only if they involved force employed 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'" *Claybrook*, 199 F.3d at 359.

The deliberate indifference test requires Plaintiff to show that "(1) officials knew of facts from which they could infer a 'substantial risk of serious harm,' (2) that they did infer it, and (3) that they nonetheless acted with indifference, demonstrating a callous disregard towards the rights of those affected." *In re Flint Water Cases*, 384 F. Supp. 3d 802, 840 (internal citations omitted). Plaintiff finds authoritative a case addressing the Flint water debacle where "residents and property owners in Flint Michigan[] were exposed to lead, legionella, and other contaminants within the municipal water supply" where Judge Levy determined that the deliberate indifference test applied. *Id.*

More recently, the Sixth Circuit outlined the standard for a substantive due process claim for bodily integrity for educational cases in *Domingo v. Kowalski*, 810 F.3d 103 (6th Cir. 2016). Plaintiffs in *Domingo* challenged "educational techniques rather than corporal punishment" and therefore "it is also particularly important to consider the relationship of [the teacher's] allegedly unconstitutional conduct to any legitimate pedagogical purpose." *Id.* The Sixth Circuit adopted the Third Circuit's *Gottlieb* test for analyzing a student's substantive due process claim for violation of their bodily integrity. The test has four criteria:

- 7 -

> a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?
>
> *Domingo*, 810 F.3d at 411 (quoting *Gottlieb ex rel. Calabria v. Laurel Highlands School District*, 272 F.3d 168, 173 (3d Cir. 2001)).

The factors "provide[] a useful, though not necessarily exhausted, list of factors to balance in evaluating a student's claim that a teacher's educational and disciplinary techniques violated the Fourteenth Amendment." *Domingo*, 810 F.3d at 411. Specifically, the first element of the test "looks to the ends motivating the teacher's actions and not the means undertaken to achieve those ends." *Domingo*, 810 F.3d at 412. For the second element Sixth Circuit provided that "when a teacher's allegedly unconstitutional conduct was motivated by a legitimate educational or disciplinary goal, the conduct must be clearly extreme and disproportionate to the need presented to be excessive in the constitutional sense." *Domingo*, 810 F.3d at 414. The third element looks at the intent of the actor. *Domingo*, 810 F.3d at 414. "Absent direct evidence of a malicious intent, courts look to the surrounding circumstances to determine whether a school official's conduct was undertaken in a good-faith effort to educate, train, or maintain discipline, or for the purpose of causing harm." *Domingo*, 810 F3d at 414. The Sixth Circuit reminds that a teacher's "educational and disciplinary methods . . . may have been inappropriate, insensitive, and even tortious. This does not, however, render them unconstitutional." *Domingo*, 810 F.3d at 416.

Defendants contend that the *Domingo*/*Gottlieb* test should apply to the instant case, while Plaintiff contends that the deliberate indifference test from *Claybrook* should apply. ECF No. 17 at PageID.233; ECF No. 20 at PageID.272. The Sixth Circuit has not specified whether they intend the *Domingo*/*Gottlieb* test to apply to all educational settings or only in the more limited K-12 context. However, in *Domingo*, they explained the *Domingo*/*Gottlieb* test is used to evaluate "a

student's claim that a teacher's educational *and disciplinary* techniques violated the Fourth Amendment." *Domingo*, 810 F.3d at 411. In addition, the third prong of the test provides two possible rationales for the force: "Was the force applied in a good-faith effort to maintain or restore discipline" or "maliciously and sadistically for the very purpose of causing harm." *Domingo* 411. Therefore, it appears the Domingo test is focused on questions on alleged violations of bodily integrity for minors in primary or secondary school. In fact, the Domingo case focused on minors with special disabilities.

In contrast, the alleged force the students used against Plaintiff during the class exercises was not used for disciplinary means, but rather as part of a class exercise in a graduate health care program. Plaintiff is a graduate student with physical disabilities who has the ability to inform her fellow students that the exercises cause her pain and request that they stop the exercises. The question of discipline (as explained in *Domingo*) or corporal punishment (as in *Gottleib*), is not relevant in this instance. The factors in the *Domingo* test do not implicate the same questions of bodily integrity at issue here.

The more appropriate test to be applied here is the *Claybrook* test because the alleged conduct by Defendant Silkwood-Sherer was not "rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation." *Claybrook* at 359. Therefore, the proper test to be applied in addressing Defendant's 12(c) challenge is the *Claybrook* deliberate indifference test.

**B.**

The deliberate indifference test requires Plaintiff to demonstrate that "(1) officials knew of facts from which they could infer a 'substantial risk of serious harm,' (2) that they did infer it, and (3) that they nonetheless acted with indifference, demonstrating a callous disregard towards the

rights of those affected." *In re Flint Water Cases*, 384 F. Supp. 3d 802, 840 (internal citations omitted). In her complaint, Plaintiff alleged that she met with Defendant Silkwood-Sherer to discuss her condition, thereby placing Defendant on notice of her physical and medical condition. ECF No. 14 at PageID.140. Then Plaintiff alleges that in the fall of 2016 she met with Defendant to discuss an accommodation for her electrical stimulation class but Defendant "did not believe that the problems Plaintiff was experiencing were caused by the interaction of her disability with the electrical stimulation treatments." ECF No. 14 at PageID.142. Plaintiff also contends that disciplinary proceedings were instituted against her "stemmed solely from [her] attempts to obtain accommodations from her professors, her confusion regarding the appropriate process to do so, and the consequences of the denial of accommodations she needed." ECF No. 14 at PageID.146-147. Together, these factual allegations provide a sufficient basis for Plaintiff's claim – Defendant knew of facts which could cause harm (Plaintiff's physical disability and her requests for accommodations), that not only did Defendant infer a risk of harm but was told about the harm occurring, and yet she continued to deny the accommodations. Plaintiff's complaint alleges sufficient facts to survive Defendant's 12(c) motion for failure to state a claim.

**D.**

In addition to Defendant's argument that Plaintiff failed to state a claim, Defendant also argues that she is eligible for qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985). The doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise

power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The existence of qualified immunity depends on whether a defendant's action violated clearly established law. *Id.* at 243–44. "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* at 244 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). However, an official "can be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002). The Court has discretion regarding the sequence with which to conduct the analysis. *Pearson*, 555 U.S. at 236. Thus, the Court may hold that a right is not clearly established law without first analyzing whether the relevant facts actually establish a constitutional violation. *Id.* Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The relevant inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Because Defendant raised the issue of qualified immunity in the motion it places the burden on the Plaintiff to establish by response that Defendant is not eligible for qualified immunity.

Plaintiff argues that the constitutional right at issue is that she has a right to bodily integrity and that the right is a matter of clearly established law. Defendant disagrees and frames the question more narrowly. The Defendant contends that the question is whether "Dr. Silkwood-Sherer violated Plaintiff's 'clearly established' right to bodily integrity by directing Plaintiff to participate in the physical therapy program." ECF No. 17 at PageID.247. However, Plaintiff's objection is not to her participation in the program, but rather the limited accommodations she received to participate in the program as well as her objection to Defendant's assertion that she was not injured during some of the exercises. The Sixth Circuit has held that there is a constitutional right to bodily integrity on multiple occasions. *See Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987) ("It is well established that persons have a fourteenth amendment liberty interest in freedom from bodily injury."); *Domingo*, 810 F.3d at 410. Defendant's argument that Plaintiff's constitutional right to bodily integrity is not a well-established right, as applied in this case, simply falls short. There are insufficient distinguishing factors to separate Plaintiff's case from other cases addressing the right to bodily integrity to conclude that Plaintiff did not have a clearly established right based on the facts she has alleged. Plaintiff's right to bodily integrity is a well-established right.

The second criteria of the qualified immunity test is whether Defendant violated Plaintiff's clearly established right. Defendant's defense of qualified immunity is raised as a part of her 12(c) motion, a motion that is focused only on the pleadings. Plaintiff has alleged that Defendant denied Plaintiff's requests for accommodations and changed the rules about who to contact regarding accommodations (the office of student disability services or her professors directly). The burden to defeat the motion for qualified immunity is thus placed on the Plaintiff. Despite spending significant time, correctly, arguing that bodily integrity is a clearly established constitutional right Plaintiff has not adequately established that Defendant violated Plaintiff's constitutional right.

Plaintiff alleges that Defendant failed to allow accommodations for her (which, as discussed earlier, is sufficient to state a claim), but the same facts without more are insufficient to demonstrate a violation of Plaintiff's right to bodily integrity. That is, Plaintiff has not demonstrated that Defendant's denial of Plaintiff's request for accommodations was indifferent, nor that she was "demonstrating a callous disregard towards the rights of those affected." As Defendant has explained, "All students were required to perform and receive certain physical mobilizations, stretches and other treatments as part of the curriculum. At most Plaintiff's allegations are that Dr. Silkwood-Sherer merely applied these same program requirements to Plaintiff so that she, too, could benefit from the same educational experiences." ECF No. 17 at PageID.247-248. Accordingly, Defendant's motion for judgment on the pleadings as to qualified immunity will be granted.

### IV.

Accordingly, **IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings, ECF No. 17, is **GRANTED** and Defendant Silkwood-Sherer is eligible for qualified immunity.

It is further **ORDERED** that Count V against Defendant Silkwood-Sherer is **DISMISSED**.

It is further **ORDERED** that Defendant Silkwood-Sherer is **DISMISSED** as a defendant.

It is further **ORDERED** that Defendant Silkwood-Sherer's Motion for Summary Judgment and for Leave to file Excess Pages, ECF Nos. 35 and 365, are **DENIED AS MOOT**.

Dated: May 18, 2020                              s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge